UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARK J. ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OFFICE OF THE STATE FIRE ) | Civil Action No.: _____ |
| MARSHAL, State of Maine, ) | |
| Department of Public Safety ) | |
| ) | |
| And ) | |
| ) | |
| JOSEPH E. THOMAS, individually ) | |
| and in his official capacity as State | |
| Fire Marshal, | |
| | |
| Defendants | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Mark J. Roberts complains against Defendants Office of the State Fire Marshal, State of Maine, Department of Public Safety and Joseph E. Thomas, personally and in his official capacity as State Fire Marshal, as follows:

SUMMARY OF THE ACTION

1. Mr. Roberts is an experienced and highly trained Senior Investigator with the Office of the State Fire Marshal for the State of Maine. In 2018 and 2019, Mr. Roberts exercised his right to free speech by testifying before the Maine Legislature and otherwise speaking as a private citizen in support of LD 1480, a bill to modify Maine's retirement program for fire investigators as a cancer prevention measure because fire

1

investigators have significantly increased risk of occupational cancer due to a variety of exposures that they routinely have while working.

2. At first, Mr. Roberts's boss, Fire Marshal Joseph E. Thomas, was largely indifferent to Mr. Roberts's efforts. But when the result of Mr. Roberts's advocacy for LD 1480 was a significant negative impact to Fire Marshal Thomas's budget, Fire Marshal Thomas retaliated against Mr. Roberts, in violation of the United States Constitution, the Constitution of the State of Maine, and Maine's Whistleblower Protection Act, by denying Mr. Roberts a rightful promotion to the position of sergeant. Another unlawful motivating factor in Fire Marshal Thomas's decision not to promote Mr. Roberts in one instance was Fire Marshal Thomas's decision to promote a less qualified female candidate over Mr. Roberts based on sex.

## PARTIES

3. Plaintiff Mark J. Roberts is a citizen of the United States and a resident of Scarborough, Maine.

4. Defendant State of Maine is a state within the United States.

5. Defendant Joseph E. Thomas ("Fire Marshal Thomas") is the Fire Marshal of the State Office of the Fire Marshal, Maine Department of Public Safety. This action is being brought against Fire Marshal Thomas in his individual and official capacities.

## JURY TRIAL DEMAND

6. Pursuant to Fed. R. Civ. P. 38(b), Mr. Roberts demands a trial by jury on any issue triable of right by a jury.

## JURISDICTION AND VENUE

7. This action seeks to vindicate rights protected by the First Amendment, as incorporated and applied to the states under the Fourteenth Amendment. It is brought under 42 U.S.C. § 1983.

8. This Court has jurisdiction over this civil rights action under 28 U.S.C. § 1331 because it arises under the Constitution of the United States, and under 28 U.S.C. §§ 1343(a)(3) and (4) because it is an action to redress the deprivation of a right—the right to free expression—secured by the Constitution of the United States.

9. The Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) because Roberts's state law claims under 26 M.R.S. §§ 831, *et seq.* / 5 M.R.S.A. M.R.S. §§ 4551, *et. seq.* are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

11. Venue in this district is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because the Defendants are located wholly within this district, and a substantial part of the events giving rise to the claims—the violation of Mr. Roberts's rights—occurred within this district.

12. Pursuant to Local Rule 3(b), this action would ordinarily be filed and tried in Bangor because a substantial part of the events or omissions giving rise to the claim occurred in Augusta, which is in Kennebec County. Mr. Roberts understands that also

pursuant to Rule 3(b), the case may be assigned to Portland because the State of Maine is a party.

## FACTUAL ALLEGATIONS

13. At all times relevant to this complaint, Mr. Roberts, who is male, held the position of Senior Investigator at the State of Maine, Office of the State Fire Marshal.

14. At all times relevant to this complaint, Fire Marshal Thomas was acting under color of state law.

15. In or around December of 2018, Mr. Roberts proposed a bill to the head of his Department, Fire Marshal Thomas.

16. Proposing legislation is not within Mr. Robert's job description and not part of Mr. Roberts's job duties.

17. The proposed bill sought to modify Maine's retirement program for fire investigators as a cancer prevention measure because fire investigators have significantly increased risk of occupational cancer due to a variety of exposures that they routinely have while working.

18. When Mr. Roberts proposed the bill, Fire Marshal Thomas told Mr. Roberts that it was nothing that he (Fire Marshal Thomas) was going to get involved with, but that if Mr. Roberts wanted to pursue it on his own, Mr. Roberts could go ahead and do that.

19. Fire Marshal Thomas took no action regarding Mr. Roberts's proposal.

20. On or about April 22, 2019, Mr. Roberts testified as a private citizen at the Maine Legislature's Labor and Housing Committee in support of LD 1480, the bill that he had proposed and found sponsorship for.

21. At the beginning of his testimony, Mr. Roberts, who was off duty at the time, stated that "I am here to testify in support of LD 1480. I am not representing any group or agency with my testimony."

22. During his testimony, Mr. Roberts spoke about occupational risks and exposures that the State had failed to adequately address (resulting in multiple cancer diagnoses and at least one death of a co-worker), and he requested relief from the Legislature to mitigate the risk through reduced exposure time by lowering the retirement age and years of service requirement.

23. In or around May of 2019, LD 1480 was voted out of committee at the Maine Legislature with the recommendation that the bill be passed into law.

24. Subsequently, the State's Department of Administrative and Financial Services ("DAFS") prepared a fiscal note indicating that the Fire Marshal's Office had an unencumbered fund balance of approximately two million dollars, and the bill would cost approximately one million dollars to fund.

25. On or about May 31, 2019, following receipt of the fiscal note, Mr. Roberts and another Senior Investigator, Edward Archer, met with Fire Marshal Thomas at the Augusta Fire Department.

26. At that meeting. Mr. Roberts asked Fire Marshal Thomas about funding for LD 1480.

27. Fire Marshal Thomas told Mr. Roberts that there was no money available to fund the bill, that "the ladies at DAFS" don't know what they're talking about and that they needed to "keep their fingers out of my cookie jar."

28. Fire Marshal Thomas went on to say that if money was needed to fund LD 1480, "a bake sale" should be held to raise those funds.

29. Fire Marshal Thomas's tone at the time was one of hostility, and his demeanor suggested that he was very annoyed that the passage of LD 1480 would have a significant impact on his budget.

30. Despite Mr. Roberts's attempts to discuss partial funding or staggered payments, Fire Marshal Thomas ended the conversation, saying that he would not authorize the expenditure of any of his budget toward LD 1480.

31. Following Fire Marshal Thomas's refusal to fund LD 1480, Mr. Roberts approached Public Safety Commissioner Michael Sauschuck to request funding for the bill, and Commissioner Sauschuck agreed to discuss the request with DAFS Commissioner Kirsten Figueroa.

32. Several days later, Commissioner Sauschuck notified Mr. Roberts that, after an audit, the State found that there was sufficient money as Mr. Roberts had described.

33. Commissioner Sauschuck added that he supported LD 1480 and that he would be working with the Legislature and Governor's Office to move the money as needed.

34. On or about June 27, 2019, Governor Janet Mills held a ceremonial bill signing, the final step in creating the law change for LD 1480, which included securing funding from the Fire Marshal's Office's budget.

35. Prior to the signing, Mr. Roberts and Mr. Archer met Fire Marshal Thomas in the State House parking lot.

36. Mr. Roberts commented to Fire Marshal Thomas that "it's not over yet, the Governor hasn't signed it yet" and Fire Marshal Thomas's response was something to the effect of, "Well, all my money is f..ing gone so I guess it's final."

37. That was the last discussion that Mr. Roberts had with Fire Marshal Thomas about LD 1480, but it was clear to Mr. Roberts at that point that Fire Marshal Thomas was very unhappy about the effect that LD 1480 had on his budget.

38. In or around October of 2019, Fire Marshal Thomas held a promotional process for the position of Sergeant for the Northern Division of the Fire Marshal's Office.

39. As head of the State Fire Marshal's Office, it was within Fire Marshal Thomas's official duties to consider applicants for this promotion, as well as the promotions discussed later in this complaint, and to determine who would be selected for this promotion and promotions discussed later in this complaint.

40. Mr. Roberts applied for the position and was duly qualified to do so.

41. Historically, it had been a requirement for a supervisor to reside in their district by the time they completed their probation (within six months).

42. In his application letter, Mr. Roberts wrote that "I understand the current opening is for Northern Maine and I want to be transparent with my intentions. I am not currently in a position where I am able to move from my current location but am very interested in the position and the process, as well as the outcome. I am confident that I am well-suited to lead the people of our investigations division and if the promoting authority is willing to consider an organizational or structural realignment to allow for my appointment, I would be grateful for the opportunity to serve as a sergeant if so chosen."

43. On or about December 13, 2019, Fire Marshal Thomas telephoned Mr. Roberts to inform him that he had not been selected for the Sergeant's position.

44. Fire Marshal Thomas told Mr. Roberts that he had been unanimously chosen by the selection committee as the top candidate, but Mr. Roberts did not get the promotion because he did not live in Northern Maine, although Mr. Roberts was not offered the position with any contingency to move by the end of the probationary period.

45. Later the same day, Mr. Roberts learned that another Senior Investigator who is female, Mary-Ann MacMaster, had been selected as the Sergeant for the Northern District.

46. Like Mr. Roberts, Ms. McMaster lived outside of the Northern District.

47. Mr. Roberts was surprised to learn that Ms. MacMaster got the promotion because Mr. Roberts was the unanimous choice of the selection committee, because Mr. Roberts had more experience than Investigator MacMaster, and because, like Mr. Roberts, Ms. MacMaster also lived outside of the Northern District.

48. Mr. Roberts was also surprised that Investigator MacMaster was chosen over Mr. Archer, who had also applied for the promotion, because Mr. Archer was also a more experienced and qualified candidate than Ms. MacMaster, and because Mr. Archer already lived in the Northern District.

49. Mr. Archer told Mr. Roberts that Fire Marshal Thomas told him (Mr. Archer) that he did not get the promotion because the Fire Marshal "had no choice" and "couldn't take on the personal or professional liability" of not promoting Ms. MacMaster.

50. In other words, in violation of the Maine Human Rights Act, Ms. MacMaster was promoted over Mr. Roberts, at least in part, because she was a woman and thus based on sex, since there was a sex discrimination case pending against their department by another female employee at the time.

51. Fire Marshal Thomas also promoted Ms. MacMaster over Mr. Roberts in retaliation for the work that Mr. Roberts did in support of LD 1480 that significantly impacted Fire Marshal Thomas's budget, which was a violation of Maine's Whistleblower Protection Act, and/or a violation of Mr. Roberts's right to free speech guaranteed to him by the First and Fourteenth Amendments of the United States Constitution and by Article I, Section 4 of the Constitution of the State of Maine.

52. Fire Marshal Thomas's decision not to promote Mr. Roberts was motivated at least in part by evil motive or intent, which was to retaliate against Mr. Roberts for Mr. Roberts's advocacy for LD 1480 that impacted Fire Marshal Thomas's budget after Fire Marshal Thomas had indicated that he did not want to fund LD 1480 from his budget.

53. Fire Marshal Thomas's decision not to promote Mr. Roberts was also the result of reckless or callous indifference to Mr. Roberts's federally protected rights.

54. On or about January 2, 2020, Ms. MacMaster was formally promoted to Sergeant.

55. On or about July 2, 2020, now Sergeant MacMaster's six-month probation period had passed, but Sergeant MacMaster had still not relocated from her residence in West Gardiner to the Northern District, which further confirmed to Mr. Roberts that Fire Marshal Thomas's statement to Mr. Roberts that he promoted Ms. MacMaster over Mr. Roberts because of Mr. Roberts's purported unwillingness to move to the Northern District was false and reaffirmed for Mr. Roberts that the real reasons that Mr. Roberts was passed over for promotion was his advocacy for LD 1480 and because it was Fire Marshal Thomas's preference to promote a female candidate.

56. Subsequently, Commissioner Sauschuck telephoned Mr. Roberts and said that Sergeant MacMaster was going to be transferred to fill a newly vacated Southern District sergeant slot, meaning that she would now be Mr. Roberts's supervisor.

57. Commissioner Sauschuck then asked Mr. Roberts how he felt about that, and Mr. Roberts replied that he thought it was not right because Sergeant MacMaster never moved to Northern Maine when Mr. Roberts had been told that he was not promoted only because he was supposedly unwilling (which was not true) to move to Northern Maine.

58. Mr. Roberts added that if he had been promoted over Ms. MacMaster as he should have been, he would now be eligible for that transfer.

59. Commissioner Sauschuck expressed that he was sympathetic to Mr. Roberts's concerns, but he said that he could not act on them without Mr. Roberts filing a complaint, and Commissioner Sauschuck suggested that Mr. Roberts file a grievance pursuant to his collective bargaining agreement.

60. Mr. Roberts filed a grievance through his union, Maine State Law Enforcement Association (MSLEA).

61. After receiving the grievance, Commissioner Sauschuck placed the transfer on hold, and no supervisor was specifically assigned to Southern Maine.

62. No acting sergeant was selected, and the Southern Division was supervised on a weekly rotating basis by Sergeant MacMaster and Sergeant Joel Davis.

63. Commissioner Sauschuck investigated the promotional process and learned that Mr. Roberts was the unanimous choice of the selection committee for the January 2020 Sergeant's promotion.

64. During a telephone call about that, Commissioner Sauschuck told Mr. Roberts that he had told Human Resources that he needed to resolve Mr. Roberts's grievance in Mr. Roberts's favor because going to arbitration would be a waste of time.

65. Commissioner Sauschuck was very forthcoming that he would have to admit that the process was flawed and that, as a result, Mr. Roberts would win his grievance.

66. On or about September 15, 2020, the Executive Director of Mr. Roberts's union, Daniel Tourtelotte informed Mr. Roberts that he had spoken with Commissioner Sauschuck and Human Resources Representative Debra Philips, and they had reached an

11

agreement, pursuant to which, Mr. Roberts would be appointed to the open Sergeant's position and given retroactive pay and seniority back to January 2, 2020.

67. Subsequently, Mr. Tourtelotte conveyed to Mr. Roberts that he learned that it had since become the State's view that Mr. Roberts's issue could not be settled by a grievance under Mr. Roberts's collective bargaining agreement, but that Commissioner Sauschuck had the authority to remedy the situation by simply appointing Mr. Roberts at the time of the next available promotion without a union grievance, and that it was his plan to do so.

68. On or about September 28, 2020, Mr. Roberts spoke with Commissioner Sauschuck on the telephone, and Commissioner Sauschuck told Mr. Roberts again that he agreed that the State/Fire Marshal's Office had improperly carried out the promotion, and that Mr. Roberts should have received the promotion that Sergeant MacMaster received.

69. By this point in time, Mr. Roberts had considered filing a claim for sex discrimination and whistleblower retaliation with the Maine Human Rights Commission and a lawsuit for violation of Mr. Roberts's First Amendment right to free speech.

70. Mr. Roberts did not file a Maine Human Rights Commission Complaint or a lawsuit, however, because of the assurances he had been given that he would be appointed to the open sergeant's position.

71. Further, Mr. Roberts was concerned that commencing litigation of an issue that the Commissioner had assured him would be remedied would potentially anger his employer, subjecting him to possible further retaliation.

72. On or about December 17, 2020, the State formally denied Mr. Roberts's grievance.

73. The reason given for the denial of Mr. Roberts's grievance was that he did not have standing to file a grievance for not receiving a position in a different Union.

74. This reasoning had not been previously raised with Mr. Roberts.

75. Mr. Roberts could have appealed the denial of his grievance, but he chose not to do so because the promotional process for the open sergeant's position was already underway at that time, and he still felt fully assured by the statements of Commissioner Sauschuck that he would be appointed to the open sergeant's position.

76. Mr. Roberts also felt that, because of Commissioner Sauschuck's assurances, commencing a Maine Human Rights Commission Complaint or lawsuit at the point would have served no purpose other than to suggest to Commissioner Sauschuck that Mr. Roberts did not trust him, which was not the case; Mr. Roberts completely trusted that Commissioner Sauschuck would honor his prior assurances.

77. On January 19, 2021, Mr. Roberts learned that he was not selected for the promotion and that Mr. Archer had been selected for the promotion, which was a violation of Maine's Whistleblower Protection Act, and/or a violation of Mr. Roberts's right to free speech guaranteed to him by the First and Fourteenth Amendments of the United States Constitution and by Article I, Section 4 of the Constitution of the State of Maine.

78. Mr. Roberts fully intended to seek redress for Fire Marshal Thomas's retaliation against him and, as discussed above, he did seek redress by filing a union grievance in July of 2020.

79. Mr. Roberts did not file a complaint with the Maine Human Rights Commission or in Court prior to January of 2021 because he truly believed that he was going to receive the next appointment to sergeant, and because he truly believed that Commissioner Sauschuck was sincere in his intent to do that.

80. Within one week of learning that he did not receive the January 2021 promotion to sergeant, Mr. Roberts consulted with legal counsel regarding the possibility of representing him in this matter.

81. Over the course of approximately two to three weeks, Mr. Roberts retained counsel and filed a complaint for Whistleblower Retaliation with the Maine Human Rights Commission.

82. During the pendency of Mr. Roberts's Maine Human Rights Commission, he was subjected to a new act of retaliation, and he amended his MHRC Complaint to include that new act.

83. In May of 2021, Mr. Roberts was passed over for yet another promotion in favor of a junior and less qualified candidate, Investigator John Wardwell.

84. Subsequently, Mr. Roberts asked his commander, Lieutenant Troy Gardner, to explain the basis for Mr. Roberts being passed over again for the position of sergeant.

85. Lieutenant Gardner said nothing about Investigator Roberts's performance, qualifications, or interview skills but, rather, Lieutenant Gardner stated, "I think for me -

personally for me - Mark I just like to see people that are willing to step up and be leaders and be positive and we are going to move forward."

86. Lieutenant Gardner's suggestion that Investigator Roberts is anything but a consistently positive contributor to his employer is meritless.

87. Investigator Roberts cannot recall a single negative interaction with Lieutenant Gardner since Lieutenant Gardner was hired in the fall of 2020, and so the lieutenant's statement about wanting people who are "willing to step up and be leaders and be positive" can only be seen as a veiled reference to Investigator Roberts's then pending Complaint to the Maine Human Rights Commission.

88. This third denial of promotion to Mr. Roberts was a violation of Maine's Whistleblower Protection Act, and/or a violation of Mr. Roberts's right to free speech guaranteed to him by the First and Fourteenth Amendments of the United States Constitution and by Article I, Section 4 of the Constitution of the State of Maine.

89. During the pendency of Mr. Roberts's Maine Human Rights Commission complaint, Mr. Roberts amended his complaint to include this new act of retaliation.

90. Mr. Roberts has complied with all procedures set forth in the Maine Human Rights Act and the Maine Whistleblower Protection Act.

91. On or about August 25, 2021, the Maine Human Rights Commission provided Mr. Roberts with a "right to sue" letter pursuant to 5 M.R.S.A. §§ 4612 and 4622.

92. Mr. Roberts has exhausted his administrative remedies.

93. As a result of the foregoing, Mr. Roberts has suffered damages, including but not limited to, lost income, loss of enjoyment in his life due to emotional suffering, the deprivation of his Constitutional rights, and attorneys' fees and costs.

## **CLAIMS FOR RELIEF**

### **Count I - Fire Marshal Thomas**

### **Violation of 42 U.S.C. § 1983: Free Expression/Due Process**

94. Mr. Roberts realleges Paragraphs 1 through 93 as though fully set forth herein.

95. This count is brought solely against Fire Marshal Thomas.

96. Fire Marshal Thomas, while acting under color of state law, unlawfully retaliated against Mr. Roberts because of Mr. Roberts exercising his constitutional rights of free speech and to petition the government, both of which are guaranteed to Mr. Roberts through the First and Fourteenth Amendments to the United States Constitution, when Mr. Roberts testified as a private citizen before the Maine Legislature and when Mr. Roberts otherwise engaged in speech as a private citizen regarding matters of public concern.

97. By acting under the color of state law to deprive Mr. Roberts of rights guaranteed by the Constitution and laws of the United States, Fire Marshal Thomas has violated and continues to violate 42 U.S.C. § 1983.

98. As a result of Fire Marshal Thomas's conduct, Mr. Roberts has suffered, and continues to suffer, damages that include but are not limited to lost income, loss of

enjoyment in his life due to emotional suffering, the deprivation of his Constitutional rights, and attorneys' fees and costs.

### Count II - State of Maine and Fire Marshal Thomas

### Violation of Article I, Section 4 of the Maine Constitution: Freedom of Speech

99. Mr. Robert realleges Paragraphs 1 through 98 as though fully set forth herein.

100. Defendants' retaliation against Mr. Roberts because of Mr. Roberts exercising his constitutional rights of free speech and to petition the government violates his right to freedom of speech under Article I, Section 4 of the Constitution of the State of Maine because it is a restriction on his right to participate in political affairs.

101. Defendants has no lawful justification for this retaliation.

102. As a result of Defendants' conduct, Mr. Roberts has suffered, and continues to suffer, damages that include but are not limited to lost income, loss of enjoyment in his life due to emotional suffering, the deprivation of his Constitutional rights, and attorneys' fees and costs.

### Count III – State of Maine

### Violation of the Maine Human Rights Act (5 M.R.S.A. § 4551, *et seq*).

103. Mr. Roberts realleges Paragraphs 1 through 102 as though fully set forth herein.

104. Mr. Roberts, as a male, is entitled to be free from discrimination based on his sex.

105. The State discriminated against Mr. Roberts based on sex when it promoted a less-qualified candidate to the position of sergeant over Mr. Roberts solely because of the desire to promote a female candidate over a male candidate.

106. As a result of the State's discrimination against Mr. Roberts, Mr. Roberts has suffered, and continues to suffer, damages that include but are not limited to lost income, loss of enjoyment in his life due to emotional suffering, the deprivation of his Constitutional rights, and attorneys' fees and costs.

### Count IV – State of Maine

**Violation of the Maine Whistleblower Protection Act (26 M.R.S.A. §§ 831, *et. seq.*) / Maine Human Rights Act (5 M.R.S.A. § 4551, *et seq*).**

107. Mr. Roberts realleges Paragraphs 1 through 106 as though fully set forth herein.

108. Mr. Roberts engaged in protected activity under Maine's Whistleblower Protection Act when he testified before the Maine Legislature and when he otherwise reported to his employer, the State of Maine, a condition or practice that would put at risk the health or safety of Mr. Roberts and/or any other individual.

109. In retaliation for Mr. Roberts's complaints regarding a condition or practice that would put the safety of him and/or others at risk, the State denied him a promotion to which he was rightfully entitled in violation of the Maine Whistleblowers' Protection Act (26 M.R.S.A. §§ 831, *et seq.*), and/or the Maine Human Rights Act (5 M.R.S.A. §§ 4551, *et seq.*).

110. As a result of the State's retaliation against Mr. Roberts, Mr. Roberts has suffered, and continues to suffer, damages that include but are not limited to lost income, loss of enjoyment in his life due to emotional suffering, the deprivation of his Constitutional rights, and attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Mark Roberts respectfully request the following relief:

a) Declare that Defendant Joseph E. Thomas, while acting under the color of state law, violated Mr. Roberts's right to free speech guaranteed to him by the First and Fourteenth Amendments of the United States Constitution;

b) Award compensatory damages against Defendants in an amount to be determined;

c) Award punitive damages against Defendant Joseph E. Thomas in an amount to be determined;

d) Order that Defendants pay Mr. Roberts's costs and reasonable attorneys' fees;

e) Award any other relief that the court deems appropriate.

Respectfully submitted, this 14th day of October, 2021

>*/s/ Jonathan M. Goodman*_____
>Troubh Heisler LLC
>200 Professional Drive, Suite 2
>Scarborough, ME 04074
>Tel: (207) 780-6789
>Fax: (207) 774-2339
>e-mail: jgoodman@troubhheisler.com